## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **BRENT D. HADASH,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:21-CV-461-P** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

### FINDINGS AND CONCLUSIONS

### I.    STATEMENT OF THE CASE

Plaintiff Brent D. Hadash ("Hadash") filed this action pursuant to Section 205(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA") and pursuant to Section 205(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security terminating her disability insurance benefits ("DIB") under Title II of the SSA. On October 6, 2019, Hadash filed both his SSI and DIB applications, alleging that his disability began on August 12, 2019. (Transcript ("Tr.") 210-217.) Hadash was initially denied on January 7, 2020, and denied upon reconsideration on April 15, 2020. (Tr. 143-48, 155-56.) Hadash then requested a hearing before

1

an Administrative Law Judge ("ALJ"). (Tr. 163-64.) On July 31, 2020, a hearing was held before an ALJ, and on October 28, 2020, the ALJ found that Hadash was not disabled within the meaning of the SSA. (Tr. at 135.) The Appeals Council denied Hadash's request for review on January 29, 2021, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-4.) Hadash filed this civil action under 42 U.S.C. Sec. 405(g), requesting judicial review of the ALJ's decision.

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third,

disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).  At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.*  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.[1]

---

[1] There are four elements of proof that must be weighed in determining whether substantial evidence of disability exists: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir. 1991).

### III. ISSUES

In his brief, Hadash presents the following issues:

A.  Whether the ALJ failed to account for the moderate limitation in concentration, persistence, or maintaining pace that the ALJ found credible;

B.  Whether the ALJ's dispositive finding was improperly based upon an unresolved conflict with the Dictionary of Occupational Titles ("DOT"), and, under the ALJ's own residual functional capacity ("RFC") finding, that Hadash cannot perform the jobs upon which the ALJ relied upon in rendering his decision;

C.  Whether the ALJ erred in failing to identify, address, and explain the resolution of the "apparent conflict" between the Vocational Expert ("VE")'s testimony and the DOT;

D.  Whether the ALJ erred in failing to fully address the medical opinion evidence of record; and,

E.  Whether remand is required where the ALJ and the Appeals Council "derived power form a single Agency Commissioner in violation of the Separation of Powers clause and the Constitution."

(Plaintiff's Brief ("Pl.'s Br.") at 1-2.)

### III.    ALJ DECISION

In his October 28, 2020, decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 119-35.) The ALJ first noted that Hadash met the insured status requirements of the SSA through March 31, 2024. (Tr. at 122.) The ALJ then stated that Hadash had not engaged in substantial gainful activity since March 24, 2019, the amended alleged onset date. (*Id.*) The ALJ further noted that Hadash had the following "severe" impairments:

> [D]egenerative changes in the cervical spine, osteoarthritis in the left (non-dominant) shoulder, table saw injury to the right hand requiring surgery, bilateral inguinal hernias requiring surgeries including right groin neurectomy, mild osteoarthritis in the right knee, osteoarthritis and a complex meniscal tear in the left knee, insomnia, major depressive disorder, and anxiety disorder.

(Tr. at 122.)  Next, the ALJ opined that Hadash "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments."  (*Id.*) As to Hadash's RFC, the ALJ stated:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) as follows: He cannot lift more than 10 pounds frequently or more than 20 pounds occasionally; he can stand and walk six hours in an eight-hour workday and sit six hours in an eight-hour workday; he can occasionally stoop, kneel, crouch, crawl, balance, and climb ramps and stairs; he cannot climb ladders, ropes or scaffolds; he can occasionally reach overhead with the left non-dominant upper extremity; he can frequently but not constantly finger and handle with the right dominant upper extremity; he is limited to detailed but not complex job tasks; and he is limited to occasional public contact.

(Tr. at 124.)  Next, the ALJ opined that Hadash was unable to perform past relevant work as actually or generally performed.  (Tr. at 133.)  However, in relying on the testimony of a VE and medical opinions, the ALJ found that "[c]onsidering the claimant's age, work experience, and residual functional capacity, the claimant has acquired work skills from the past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy."  (*Id.*)  Consequently, the ALJ determined that Hadash was not disabled.  (Tr. at 134.)

## V. DISCUSSION

### A. Appointments Clause

Because the final issue raised by Hadash related to the Appointment Clause impacts whether the Court should consider the remaining issues, the Court will address the Appointments Clause issue first.  Hadash argues that his case must be reversed and remanded for a new hearing because the ALJ issuing the unfavorable decision was not properly appointed prior to issuing his decision in accordance with the Appointments Clause of the United States Constitution.  (Pl.'s Br.

at 17-20.) Hadash, relying, *inter alia*, on *Lucia v. Securities Exchange Commission,* 138 S. Ct. 2044 (2018), *Carr v. Saul,* 141 S. Ct. 1352 (2021),[2] and *Seila Law, LLC v. Consumer Financial Protection Bureau,* 140 S. Ct. 2183 (2020),[3] claims, in essence, that the ALJ is an officer of the United States, not a mere employee, and, consequently, according to the Appointments Clause, must be appointed by either the President, the courts of law, or the heads of departments. (Pl.'s Br. at 17-20 (citing United States Constitution, Art. II, s. 2, cl. 2).)[4] Hadash argues that the ALJ's improper appointment, "deprived [Hadash] of a valid administrative adjudicatory process under 41 U.S.C. § 405 (b)(1)." (Pl.'s Br. at 18.) Further, Hadash claims that "broad prudential concerns

---

[2] Hadash relies on cases that, essentially, question whether an officer or agency head can lawfully and fully exercise his statutory power despite an improper appointment.

In *Lucia*, the Court held that Securities and Exchange Commission ("SEC") ALJs are "inferior officers" that must be appointed pursuant to the Appointment Clause of the United States Constitution and that a challenge to the ALJs appointment must be timely made. *Lucia*, 138 S. Ct. at 2051-56. Subsequently, circuit courts interpreted *Lucia*'s "timely" requirement to mean a complaint about an ALJ's appointment must be raised at an administrative level or is deemed waived. *See, e.g., Valasquez on Behalf of Velasquez v. Berryhill,* No. 17-17740, 2018 WL 6920457, at *3 (E. D. La. Dec. 17, 2018). Recently, however, a growing number of Courts have determined that a social security disability benefit claimant's challenges to the proper appointment of an ALJ are timely raised for the first time on review of the administrative decision in federal court. *Carr*, 141 S. Ct. at 1362 (Reasoning there is "no requirement that claimants exhaust such challenges to an ALJ's appointment in administrative proceedings in order to preserve them for judicial review.").

[3] In *Seila Law*, the Court held that a for-cause restriction of the President's executive power to remove the head of the Consumer Financial Protection Bureau ("CFPB") violated constitutional separations of powers. 140 S. Ct. at 2197. The Court limited this, however, by holding that the for-cause-removal-protection provision of the Dodd-Frank Wall Street Reform and Consumer Protection Act was severable from other provisions of Dodd Frank. *Id.* at 2209. Essentially, the Supreme Court found that because "the only constitutional defect [] in the CFPB's structure is the Director's insulation from removal," the "removal provision can be severed from other statutory provisions relating to the CFPB's powers and responsibilities." *Id.* (relying on *Free Enterprise Fund v. Pub. Co. Acct. Oversight Bd.,* 130 S. Ct. 3138 (2010)).

[4] The relevant portion of the Appointments Clause provides as follows:

[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the [S]upreme Court, and all other Offices of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2.

confirm that Plaintiff must be accorded a remedy for the government's violation of [Hadash's] rights." (Plaintiff's Reply Brief ("Pl.'s Rep. Br.") at 31 (emphasis omitted).)

In her response, the Commissioner states, "The parties agree that 42 U.S.C. § 902(a)(3), violates the separation of powers to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause." (Defendant's Brief ("Def.'s Br.") at 10.) However, the Commissioner argues that "without more, that conclusion does not support setting aside an unfavorable SSA disability benefits determination." *Id.* Relying, *inter alia*, on *Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021), the Commissioner states that "even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction actually caused her harm." *Id.* The Commissioner argues that Hadash is unable to show that he was harmed by the unconstitutional statutory removal restriction for two reasons:

> First, the ALJ who issued the final decision denying Plaintiff's claim was not appointed by a Commissioner subject to Section 902 (a)(3)'s removal restriction.   Rather, the ALJ had his appointment ratified by an *Acting* Commissioner of Social Security–whom the President could remove from that role at will, at any time.  As a factual matter, there is thus no separation of powers concern in Hadash's case.

> Second, even putting aside the circumstances of the ALJ's appointment, Plaintiff must show that Section 902(a)(3)'s removal restriction caused the denial of her benefits claim.  She has not made—and cannot make—that showing.

(*Id.* at 10-11.)

In *Collins*, Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporation ("Freddie Mac") shareholders brought an action asserting, *inter alia*, that the Federal Housing Finance Agency ("FHFA") Director was unconstitutionally appointed in violation of separation of powers. 141 S. Ct. at 1770. *Collins* upheld *Lucia*'s precedent, finding that "the Constitution prohibits even 'modest restrictions' on the President's power to remove the

head of an agency with a single top officer." *Collins*, 141 S. Ct. at 1787 (quoting *Seila Law*, 140 S. Ct. at 2205). Having upheld the removal restriction as a Constitutional violation, the Court in *Collins* then analyzed the "retrospective relief" available to the complaining shareholders. *Id.*

The Court found that the FHFA's Director was appropriately appointed to his position, and, despite the FHFA's unconstitutional removal provision, that "there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions in the office." *Id.* at 1788 (Relying on *Seila Law*, 140 S. Ct. at 2207-2211.). Further, the Court stated that "[s]ettled precedent also confirms that the unlawfulness of the removal provision does not strip the [agency head] of the power to undertake the other responsibilities in his office." *Id.* at n. 23 (Relying on *Seila Law*, 140 S. Ct. at 2207-2211.).[5]

The Court in *Collins*, however, did not abandon the shareholders' argument that improper appointment of the FHFA director *could* inflict "compensable harm" on the shareholders. The Court stated that "the possibility that the unconstitutional restriction on the President's power to remove a[n] [agency head] could have such an affect cannot be ruled out."[6] 140 S. Ct. at 1789. Ultimately, the Court did not specify what it would consider as compensable harm. However, *Collins* makes clear that statutory provisions providing an agency head with the powers to act can be severed from removal restrictions. *Id.* at 1795 (Thomas, J., concurring).[7]

---

[5] "The mere existence of an unconstitutional removal provision, too, generally does not automatically taint Government action by an official unlawfully insulated." *Collins*, 141 S. Ct. at 1793 (Thomas, J., concurring).

[6] The Court provided an example of compensable harm stemming from an agency head's unconstitutional appointment: "[I]f the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal." *Id.* at 1789.

[7] Justice Thomas suggests the bar for proving a "compensable harm" based on an unlawful removal provision is steep: "I seriously doubt that the shareholders can demonstrate that any relevant action by an FHFA Director violated the Constitution. And, absent an unlawful act, the shareholders are not entitled to a remedy." *Id.*

It is apparent, based on *Collins*, that the SSA Commissioner's removal-for-good-cause provision pursuant to 42 U.S.C. 902(a)(3) is unlawful. It is also apparent from the record that the ALJ was appointed by an Acting SSA Commissioner, who is subject to the President's removal without good cause. (Def.'s Br. at 10.) What is not apparent, however, is how the ALJ, appointed by an acting SSA Commissioner, caused compensable harm to Hadash by denying his disability benefits. Absent a nexus between the unlawful removal statute of the SSA Commissioner, the ALJ's appointment, and subsequent denial of Hadash's SSI and benefits, the Court finds that remand is not required on this issue.

### B. **Mental RFC Determination**

Hadash also argues that the ALJ erred in determining Hadash's RFC as such finding "failed to include ANY work-related limitation to account for Mr. Hadash's moderate limitation in concentrating, persisting, or maintaining pace." (Pl.'s Br. at 4 (citation omitted).) Hadash states that the ALJ completed the requisite psychiatric review technique ("PRT") analysis "and found that Mr. Hadash had at least moderate limitations in his ability to concentrate, persist, or maintain pace." (*Id.* (citation omitted).) As such, Hadash states it is "beyond dispute that 'moderate' limitations are not negligible or non-existent," and that these mental functional limitations should have, but were not, included in Hadash's RFC. (*Id.*) "However, the only mental functional limitations in the RFC finding that were Mr. Hadash was 'limited to detailed but not complex job tasks;' and 'limited to occasional public contact.'" (*Id.* at 5 (citation omitted).) Consequently, Hadash argues that remand is required, as the "ALJ's RFC does not account for all of the limitations [the ALJ] found proven in the record." (*Id.*)

In her response, the Commissioner states that "[t]he ALJ reasonably accounted for any moderate limitations in concentration, persistence, or pace by limiting Hadash to performing detailed but not complex job tasks." (Def.'s Br. at 3 (citation omitted).) The Commissioner states

9

that the ALJ, in evaluating whether Hadash met or equaled a listed impairment at Step Three, made findings of mental limitations. (*Id.*) She argues that the Step Three findings are "paragraph B" findings and do not "directly correlate to the RFC." (*Id.*) The Commissioner states that "policy guidance makes clear that 'the limitations identified in the "paragraph B" . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.'" (*Id.* (citing SSR 96-8p, 1996 WL 374184, at *4 (1996)) The Commissioner argues that "[t]here is no Fifth Circuit-mandated requirement, much less a statutory, regulatory, or policy requirement, that an ALJ incorporate the 'paragraph B' findings word-for-word in the RFC assessment[,]" and, therefore, Hadash's argument fails. (*Id.* at 4.)

The paragraph B criteria limitations of having moderate limitations in maintaining concentration, persistence, and pace that the ALJ found following the "special technique" is not an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). Instead, it is used to rate the severity of Hadash's mental impairments at Steps 2 and 3 of the sequential evaluation process. *Id.* "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listing of Impairments." *Id.* These functions including the consideration of the claimant's abilities to: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself.[8] 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E. "While the regulations require the ALJ to

---

[8] These four functional areas are known as the "paragraph B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§ 12.00A.2.b, 12.00E. The degree of limitation is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). Extreme "represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.* "If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (*see* §404.1522)." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

evaluate[] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into the RFC determination." *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009).

Based on the facts in this case, the ALJ's mental RFC determination limiting Hadash to the performance of "detailed, but not complex job tasks," and "occasional public contact," is not contradictory with the ALJ's finding in the "special technique" that Hadash was moderately limited in his ability to maintain concentration, persistence, or pace. (Tr. 123.) It is clear that the ALJ recognized in his decision that he was required to evaluate Hadash's mental impairments pursuant to the "special technique" set forth in the regulations as he made such an evaluation. (Tr. at 122-24.)

In his decision, the ALJ found at Step Two that Hadash did have the severe mental impairments of, *inter alia*, major depressive disorder and anxiety disorder. (Tr. 122.) Accordingly, at Step Three, the ALJ discussed at length Hadash's mental impairments as they pertained to "paragraph B." (Tr. at 123.) There, the ALJ found that Hadash's mental impairments with regard to concentrating, persisting or maintaining pace were a "moderate limitation." (Id.) The ALJ reasoned, "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." (Id.)

The ALJ then incorporated Hadash's functional limitations of having moderate deficits in concentration, persistence, and pace into limitations in the RFC that Hadash was limited to "detailed but not complex job tasks" and "occasional public contact." (Tr. at 124.) Similar

findings have been upheld in numerous other courts.[9]  In this case, the ALJ properly discussed the evidence in the record in making the RFC determination, explained the reasoning for the RFC determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into the RFC that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).  Because there is substantial evidence in the record that supports the ALJ's mental RFC assessment, remand is not required.

### C. **DOT and RFC Conflict**

Next, Hadash argues that the three jobs provided by the VE (and adopted by the ALJ) conflict with his RFC limitation.  (Pl.'s Br. at 7-10.)  In support, Hadash states the following:

> According to the DOT, each of the three occupations identified by the VE and adopted by the ALJ, by definition, require the ability to carry out more than detailed instructions. All three occupations that the VE testified could be performed by an individual with Mr. Hadash's RFC have a reasoning level of 3 or 4. Unquestionably, occupations with a reasoning level of 3 and 4 exceed the RFC limitation to performing "detailed but not complex job tasks." Because work at that reasoning level far exceeded the mental limitations in the ALJ's RFC, remand cannot be avoided.

---

[9] *See, e.g.*, *Williams v. Colvin*, No. 4:14-CV-114-BJ, 2015 WL 1288348, at *6 (Mar. 20, 2015) ("Based on the facts in this case, the ALJ's mental RFC determination limiting [claimant] to the performance of detailed but not complex work is not contradictory with the ALJ's finding in the 'special technique' that [claimant] was moderately limited in her ability to maintain concentration, persistence, or pace."); *De La Rosa v. Astrue*, No. EP-10-CV-351-RPM, 2012 WL 1078782, at *14-16 (W.D. Tex. Mar. 30, 2012) (holding that the ALJ's finding that claimant had moderate limitation in concentration, persistence, and pace was properly accounted for in an RFC determination that claimant was, *inter alia*, able to understand, remember, and carry out detailed but not complex instructions, make decisions, and attend and concentrate for extended periods); *Chadwell v. Astrue*, No. 4:08-CV-736-Y, 2010 WL 3659050, at *11 (N.D. Tex. May 25, 2010) ("[T]he ALJ's finding that [the claimant] was moderately limited in her ability to maintain concentration, persistence, or pace is not inherently contradictory with an RFC assessment that [the claimant] could not perform work that involves complex instructions."); *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009) (holding, in essence, that the ALJ's finding that the claimant had a moderate limitation in concentration, persistence, and pace was not inconsistent with his RFC determination that claimant could understand, remember, and carry out more than simple instructions). *But see Eastham v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-2001-L, 2012 WL 691893, at *8 (N.D. Tex. Feb. 17, 2012) ("The Court finds the Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace is not persuasive."), *adopted in* 2012 WL 696756 (N.D. Tex. Mar. 5, 2012) (Lindsay, J.); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (finding that claimant's impairment in concentration, persistence, or pace was not accommodated by limitation to simple tasks in the hypothetical to the vocational expert because it did not account for deficiencies in pace); *Owen v. Astrue*, No. 3:10-CV-1439-BH, 2011 WL 588048, at *14 (N.D. Tex. Feb. 9, 2011) ("As determined by several courts, a finding that Plaintiff can perform unskilled work is fatally flawed where the ALJ has found Plaintiff to have moderate limitations in concentration, persistence, or pace.")

(Pl.'s Br. at 10 (internal citations and emphasis omitted).)

In her response, the Commissioner states the following:

> The reasoning development levels range from a low of 1 to a high of 6 . . .
> . [T]here is not such a clear delamination between simple and complex among the
> intermediary reasoning levels.    The requirements listed in the DOT are the
> maximum requirements for a position as it is generally performed and not the range
> of requirements of a particular job as it is performed in a specific setting.
>
>         . . . .
>
> [T]he question is whether the ability to perform detailed but not complex
> job[] tasks translates into an inability to perform any job designated by the DOT as
> entailing a level 3 or 4 reasoning . . . [I]n *Gee v. Saul*, the court held that " . . . level
> R3 and R4 occupations listed in the DOT are not necessarily incompatible with the
> ability to perform detailed but not complex work . . ."

(Def.'s Br. at 9 (internal citations omitted).)    The Commissioner, quoting *Blair v. Commissioner,*
*Social Security Administration*, states, "It is important to note that the DOT does not state that
reasoning development level 3 or 4 requires the ability to understand, remember, and carry out
'complex' instructions . . . . Therefore, no apparent conflict exists." No. 6:13-CV-345, 2014 WL
5336483, at *12 (E.D. Tex. Sept. 30, 2014).

In this case, as stated above, the ALJ found that Hadash had the RFC to perform "light
work"[10] and that he is "limited to detailed but not complex job tasks."[11]    (Tr. 124.)  Thereafter, at
Step Five, the ALJ held, based upon the testimony of the VE, that Hadash could perform the jobs
of personnel scheduler, maintenance scheduler, and space scheduler that existed in significant
numbers in the national economy.  (Tr. at 133-4.)  In making such a determination, the ALJ stated:

---

[10] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects
weighing up to 10 pounds; even if the weight lifted is very little, a job is also in this category when it requires a good
deal of walking or standing or when it involves sitting most of the time with some pushing and pulling of arm or leg
controls.  20 C.F.R. §§ 404.1567(b), 416.967(b).

[11] Jobs having a SVP of 3-4 are defined as "semi-skilled" work. SSR 00-4p, 2000 WL 1898704, at *3 (citing
20 C.F.R. §§ 404.1568, 416.968).

> In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.
>
>       . . . .
>
> The vocational expert was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant. The vocational expert responded and testified that representative occupations such an individual could perform include: 1) personnel scheduler, DOT code 215.367-014, which is sedentary in exertion with an SVP of four, with approximately 4,000 such jobs in existence in the national economy; 2) maintenance scheduler, DOT code 221.367-066, which is sedentary with an SVP of four, with approximately 12,000 jobs in existence in the national economy; and 30 space scheduler, DOT code 238.367-022, which is sedentary with an SVP of four, with approximately 18,000 such jobs in existence in the national economy.
>
>       . . . .
>
> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. The vocational expert testified the foregoing testimony was consistent with the DOT.

(Tr. 133-4.)

The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Newton*, 209 F.3d at 453. "Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding." *Newton*, 209 F.3d at 453. In this case, the ALJ supported his determination at Step Five by relying upon the testimony of the VE.

A VE is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes

and skills needed." *Id.* In testifying, a VE "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

While it appears that the jobs found by the ALJ that require an ability to perform light work are outside of the ALJ's RFC determination, the Court notes that SSR 00-4p clarifies that the DOT lists the ***maximum*** requirements for a position as it is generally performed, not the full range of requirements. SSR 00-4p, 2000 WL 1898704, at *3 (S.S.A. Dec. 4, 2000). Moreover, the Court is not convinced that a "SVP level in a DOT listing . . . addresses whether a job entails only simple repetitive tasks." *Otte v. Comm'r, Soc. Sec. Admin.*, No. 3:08-CV-2078-P, 2010 WL 4363400, at *7 (N.D. Tex. Oct. 18, 2010). The SVP level refers to the "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, App. C (rev. 4th ed. 1991). Instead, it is the Reasoning Development Level ("RDL") that appears to specify the type of reasoning capabilities each of the described jobs requires. *Id.* at *8.

As noted above, the value of a VE is that he "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170. In this case, the VE testified that a person with Hadash's RFC determination, including a limitation to the performance of simple work, could perform various jobs that exist in significant numbers in the national economy. Such testimony provides substantial evidence for the ALJ to rely on at Step Five. Based on the foregoing, any proffered error would not be prejudicial and would not warrant a reversal of the ALJ's decision. *See Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 617 (E.D. Tex. Apr. 8, 2009) ("The Commissioner's burden at Step 5 of the sequential evaluation

process . . . is satisfied by showing the existence of only *one* job with a significant number of available positions that the claimant can perform.")

### D. **DOT and VE Conflict**

Hadash also argues that "the ALJ failed to identify, address, and explain the resolution of the apparent conflicts between the vocational expert's testimony and the DOT." (Pl.'s Br. at 11 (emphasis omitted).)  According to Hadash, there are two "apparent conflicts." (Id.)  The first conflict, Hadash argues, is that "the hypothetical question to the VE [] precluded more than occasional overhead reaching [] yet the DOT indicates that two of the occupations identified by the VE and adopted by the ALJ require frequent reaching." (*Id*.)  Hadash states "[t]here [is a] difference between performing an activity frequently and occasionally" and that the "occupations identified by the VE included a reaching ability that substantially exceeded what the ALJ concluded was the maximum amount of reaching Mr. Hadash could perform." (*Id*. at 11-2.)

The second conflict, Hadash argues, is that the occupation of space scheduler "was actually precluded by the RFC limitation to 'occasional public contact.'" (Pl.'s Br. at 14 (internal citations omitted).)  Specifically, Hadash claims that "[t]he occupation of space scheduler receives requests for the use of space activities, such as meetings, lectures, conferences, thus requiring significant speaking with others . . . [and] [n]either the ALJ nor the VE addressed how Mr. Hadash could perform such a socially interactive job with his proven limitations in public interaction." (*Id.* (internal citations omitted).)  Because of these "apparent conflicts," Hadash maintains the ALJ should have "obtain[ed] a reasonable explanation from the VE as to why their testimony appears to conflict with the DOT [and], [a]fter doing so, the adjudicator must resolve the apparent conflict and explain their basis for doing so." (*Id*. at 11.)

16

In her response to Hadash's first conflict, the Commissioner argues the following:

> There was no apparent conflict between the VE's testimony that an individual who was limited to overhead reaching with the non-dominant left arm could perform the personnel scheduler, maintenance scheduler, and space scheduler jobs and the DOT's description of those jobs. First, the DOT does not specific whether reaching must be performed with both arms . . . Next, [courts] have found no direct conflict between VE testimony concerning overhead reaching and the DOT "because the DOT does not describe any job duties that would require overhead reaching."

(Def.'s Br. at 6 (internal citations omitted).)    With regard to Hadash's second conflict, the Commissioner argues the following:

> As with reasoning and reaching, Hadash has not established an apparent conflict with public contact. Instead, Hadash attempts to supplant his own opinion for that of the VE, by conjecturing that a space scheduler job requires more than occasional public contact merely because it involves receiving requests for the use of space for activities. Hadash ignores that the DOT also describes the job duties as consulting charts and records, maintaining schedules and records, requisitioning needed equipment, and arranging for cleaning of rooms.

(Def.'s Br. at 7 (internal citations omitted).)  "Finally, the ALJ specifically asked the VE if his testimony was consistent with the DOT and he specifically testified that it was." (*Id.*) Moreover, "Hadash's attorney did not question the VE about any potential conflicts . . . [; t]hus, Hadash's argument is meritless." (*Id.*)

To begin with, the Court must determine if a conflict actually exists between the VE's testimony and the information given in the DOT. As stated above, the ALJ found in his RFC determination that Hadash had the ability to, *inter alia*, perform light work that is limited to detailed but not complex job tasks and occasional public contact. (Tr. 124.) The ALJ also found, based on the testimony of the VE, that Hadash could perform the jobs of personnel scheduler, maintenance scheduler, and space scheduler. (Tr. at 134.) The VE and the ALJ identified the specific DOT codes associated with such positions, and the ALJ stated in his decision that the VE's "testimony was consistent with the information contained in the Dictionary of Occupational Titles." (*Id.*)

17

Even assuming that there was a conflict between the VE's testimony and the information contained in the DOT, such a conflict is not a direct or facial conflict; instead, it would be an implied or indirect conflict. "All kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation." *Adams v. Astrue*, No. CV-07-1248, 2008 WL 2812835, at *3 (W.D. La. June 30, 2008). "The Fifth Circuit has held that claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present the conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Id.*; *see Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000.) Hadash, who was represented by an attorney at the hearing before the ALJ and whose attorney was specifically asked by the ALJ if he had any questions regarding the VE's testimony (Tr. at 54), did not raise any such implied conflict at the administrative hearing. Consequently, Hadash will not now be permitted to peruse the record in search of a conflict to present as reversible error and, instead, is found to have waived such argument. *See, e.g.*, *Young v. U.S. Comm'r Soc. Sec.*, No. CV08-0474, 2009 WL 2827945, at *13 (W.D. La. Sept. 1, 2009).

### E. Medical Opinion Evidence

Hadash's next argument is that the ALJ "fail[ed] to fully address the medical opinion evidence of record." (Pl.'s Br. at 15 (emphasis omitted).) Hadash claims that the ALJ failed to either "accept and include" or "reject and explain" his evaluation of medical opinion evidence. (*Id.*) Specifically, Hadash states that the "ALJ did not find any Agency medical consultant opinion to be 'fully persuasive,'" and that the ALJ "failed to provide a basis for his rejection of [the Agency medical consultant conclusions that Hadash was limited in his ability to reach overhead and laterally reach to the front and sides]." (*Id.* at 15-6.) As the ALJ "was obligated to explain his

18

decision to omit the lateral and front reaching limitations form the Agency consultant opinions"
when rendering his RFC finding, Hadash asserts that "remand must occur." (Pl.'s Br. at 17.)

In response, the Commissioner states the "ALJ properly assessed Hadash's RFC in
accordance with the pertinent regulations and Social Security Rulings by considering all the
relevant evidence, including all medical evidence of record." (Def.'s Br. at 7-8.)    The
Commissioner argues the following:

> Regarding the State agency medical consultants' RFC findings, the ALJ
> was not fully persuaded because they were not fully consistent with or supported
> by objective findings.    The ALJ gave an example of an inconsistency in
> manipulative limitations, noting medical evidence did not establish a limitation to
> occasional right hand handling and fingering.  Hadash argues that the ALJ erred in
> not specifically addressing the manipulative limitation of reaching in the front
> and/or laterally with his left, non-dominant arm.  However, the ALJ explained that
> the State agency medical consultants did not have the benefit of Hadash's testimony
> or the updated medical evidence, and this reasoning clearly extended to his
> evaluation of the entire prior administrative medical findings, including all the
> manipulative limitations such as reaching.    Thus, the ALJ properly found that
> Hadash's left shoulder impairment limited him to occasionally reaching overhead
> with the left arm.

(Def.'s Br. at 8-9.)  The Commissioner also argues that Hadash has failed to prove the ALJ's
omission caused him harm, noting that "the jobs the ALJ relied on at step five involved limited
reaching in all directions." (Tr. 10.)

RFC is what an individual can still do despite his limitations.[1]  SSR 96-8p, 1996 WL
374184, at *2 (July 2, 1996).  It reflects the individual's maximum remaining ability to do
sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see*
*Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour
day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2.  RFC is

---

[1] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the
assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).  The Commissioner
assesses the RFC before proceeding from step three to step four.  *Id.*

not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[2] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis

---

[2] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

The ALJ's treatment of medical opinions is governed by the revised rules in 20 C.F.R. § 404.1520c, which apply to claims that were filed after March 27, 2017, such as the claims in the present case. *See Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R. 404.1520c(a)); *Governor v. Comm'r of Soc. Sec.*, No. 20-54-BAJ-EWD, 2021 WL 1151580, at *6 (M.D. La. Mar. 2, 2021). Pursuant to 20 C.F.R. § 404.1520c(a), the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." "When a medical source provides one or more medical opinions[12] or prior administrative medical findings,[13] [the ALJ] will consider those medical opinions or prior administrative findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of" section 404.1520c(a), as appropriate. 20 C.F.R. § 404.1520c(a) (footnotes added). The ALJ is not

---

[12] Medical opinions are statements from a medical source about what the claimant can still do despite her impairment(s) and whether the claimant has one or more impairment-related limitations or restrictions in certain abilities. These may include claimant's ability to: (i) perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) perform other demands of work, such as seeing, hearing, or using other senses; and, (iv) adapt to environmental conditions, such as temperature extremes or fumes. *See* 20 C.F.R. § 404.1513(a)(2).

[13] Prior administrative findings are findings other than the ultimate determination about whether the claimant is disabled, about a medical issue made by the Commissioner's federal and state agency medical and psychological consultants at a prior level of review of the claimant's current claim based on their review of the evidence in the case record. Such findings could be on issues including: (i) the existence and severity of the claimant's impairment(s); (ii) the existence and severity of the claimant's symptoms; (iii) statements about whether the claimant's impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) the claimant's RFC; (v) whether the claimant's impairment(s) meets the duration requirement; and (vi) how failure to follow prescribed treatment and drug addiction and alcoholism relate to the claimant's claim. *See* 20 C.F.R. § 404.1413(a)(5).

required to articulate how he considered each medical opinion or prior administrative medical findings from one medical source individually. 20 C.F.R. § 404.1520c(b)(1).

"The most important factors [the ALJ] consider[s] when [ ]evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." 20 C.F.R. § 404.1520c(a). "The ALJ must explain the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in his determination, and he may, but is not required to, explain how he considered the (c)(3) [through] (c)(5) factors, *i.e.*, relationship with the claimant, specialization, and 'other factors.'" *Governor*, 2021 WL 1151580, at *7. "Only *if the ALJ finds* that there are two or more medical opinions or prior administrative medical findings about the same issue that are both well-supported and consistent with the record but are not exactly the same, must the ALJ articulate consideration of the (c)(3) through (c)(5) other most persuasive factors for those medical opinions or prior administrative medical findings in the determination." *Id.*

In this case, the ALJ found, as stated *supra*, that Hadash had the RFC to perform light work with additional physical and mental restrictions. (Tr. 124.) In making his RFC determination, the ALJ considered the hearing testimony, "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and "the medical opinion(s) and prior administrative medical finding(s)." (*Id.*) Specifically, the ALJ considered the examination, treatment notes and opinions of multiple doctors, including but not limited to, the following: State Agency Medical Consultants ("SAMCs"), Stuart Pickell, M.D. ("Dr. Pickell"), Stephen Brotherton, M.D. ("Dr. Brotherton"), Dustin Derrick, M.D. ("Dr. Derrick"), Thomas Ratino, M.D. ("Dr. Ratino"), Joseph Milne, M.D. ("Dr. Milne"), Laurence

Ligon, M.D. ("Dr. Ligon"), and Physician's Assistant Glorianna Iloff ("PA Iloff"). (Tr. at 125-29.)

Regarding the SAMCs and their determination of Hadash's impairments, the ALJ stated that he found their opinions very persuasive "as to major joint dysfunction [] consistent with and supported by objective evidence." (Tr. 122.) Dr. Ligon found Hadash was limited in reaching "left in front and/or laterally" and "left overhead," and that Hadash required a "complete left shoulder replacement." (Tr. 65-6; see also (Tr. 76, 93, 108.).)

As to Dr. Pickell and the weight given to his medical opinion regarding Hadash's left shoulder, the ALJ stated, *inter alia*, the following:

> When the claimant saw Dr. Pickell in November 2018 . . . . [Hadash's] physical examination was unremarkable. He was not in distress and appeared to be well. He had a normal gait with reduced range of motion in the left shoulder and pain when reaching behind his back and behind his head . . . In March 2019 . . . . Dr. Pickell advised the claimant that he would have to see pain management if he wanted pain medications increased, but the claimant declined. The claimant reported he was trying to get everything in order so he could have left shoulder replacement. He did not want to go to pain management . . . . His physical examination was again unremarkable in November 2019.

(Tr. at 125.)

Dr. Brotherton saw Hadash in January 2019 for his left, non-dominant, shoulder pain. As to Dr. Brotherton, the ALJ opined the following:

> Examination revealed reduced left shoulder range of motion, particularly in internal and external rotation. An x-ray showed high-grade degenerative changes, particularly inferiorly, with large spurs off the inferior glenoid and inferior humeral head, some of which were probably loose bodies. There was evidence of an old acromioclavicular sprain with inferior bone formation, probably representing the coracoclavicular ligaments, and the clavicle was a bit elevated, consistent with an old grade II acromioclavicular separation.

(Tr. at 126.) Also, in January 2019, Dr. Brotherton referred Hadash to Dr. Milne for his left shoulder pain. Regarding Dr. Milne's examination, the ALJ stated the following:

> [Dr. Milne] noted a history of left distal clavicle fracture []. The claimant complained of intermittent numbness in the left fourth and fifth digits. He was tender at the joint line of the left shoulder and mildly tender at the long head of biceps when examined. The site of the distal clavicle fracture was not tender. Dr. Milne recommended surgery [], given the claimant's symptoms, and the claimant agreed.

(*Id.*)

At the July 2020 hearing before the ALJ, Hadash stated he "missed a lot of work due to pain and could not get any relief without medication." (Tr. 129.) Further, Hadash stated that he "cannot reach overhead or in front," and "can stand one hour at the most." (*Id.*) Hadash also complained that he "has arthritis and pain in his shoulders, neck, back, right hand, left knee, left ankle, and hip." (*Id.*)

After having "fully considered the medial opinions and prior administrative medical findings in this case," the ALJ then opined the following:

> I considered the opinions of the State agency medical consultants. However, those opinions are not fully consistent with or supported by objective findings. For example, I find medical evidence does not establish only occasionally handling and fingering with the right hand. Medical evidence and the claimant's allegations do not support a finding that the claimant has significant medication side effects. In addition, the State agency medical consultants did not have the benefit of the claimant's testimony as to mental limitations or the benefit of updated medical evidence. Because the opinions of the State agency medical consultants are not fully consistent with or supported by the record now before me, they are not fully persuasive.

>     . . . .

> I recognize the claimant may have pain and functional loss secondary to his impairments. However, even moderate levels of pain and functional loss are not, in and of themselves, incompatible with the ability to maintain the exertional and non-exertional requirements of work-related activities on a consistent, sustained basis at each level of exertion . . . In this case, neither the objective medical evidence, the allegations of the claimant, nor the other non-medical evidence establishes the claimant is so limited as to be found disabled.

>     . . . .

24

However, the claimant has documented degenerative changes in the cervical spine and documented abnormalities in his left shoulder and bilateral knees, all of which can reasonably account for some degree of pain.

. . . .

After careful review, I find the claimant cannot work at the heavier levels of exertion. Lifting at those levels is contraindicated by the claimant's spinal and left shoulder impairments, as well as his history of hernias and repairs . . . . However, objective findings support a conclusion that the claimant can perform the exertional requirements of light work. He cannot climb ladders, ropes, or scaffolds due to his left shoulder impairment . . . However, he can occasionally perform other postural activities. Due to his left shoulder impairment, he can only occasionally reach overhead with that extremity.

(Tr. at 130-1.)

As noted above the ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence in the record. 20 C.F.R. 404.1546(c). If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error. *See Gutierrez v. Barnhart*, 2005 WL1994289, at *7 (5th Cir. Aug. 19, 2005). At issue here is the ALJ's treatment of the medical opinions of the SAMCs. The ALJ, in making his RFC determination, dedicated multiple pages to considering and analyzing the medical and other evidence in the record and his reasoning is supported by and consistent with the record. The ALJ found the SAMCs' opinions to be inconsistent, providing the above example of the inconsistency. (Tr. 131.) The ALJ further opined that the SAMCs were without the benefit of Hadash's own testimony and updated medical evidence. (*Id.*) While it may not be the limitation Hadash desired, the ALJ provided an appropriate limitation in his RFC based on the record. Additionally, this Court finds that Hadash has not shown he was harmed by the ALJ's rejection of the SAMCs' findings. Based on the foregoing, because there is substantial evidence in the record that supports the ALJ's RFC determination and that the ALJ properly considered the SAMCs and other medical opinions, remand is not required.

## RECOMENDATION

It is recommended that the Commissioner's decision be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **September 13, 2022,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 30, 2022.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE